HENRI HENNEQUIN et al., Respondents, *v.* HENRY CLEWS et al., Appellants.

An action for the conversion of securities, pledged to the defendant as collateral security for a loan, is barred by the defendant's discharge in bankruptcy.

The cause of action is not a debt "created by the fraud * * * of the bankrupt, * * * or while acting in any fiduciary capacity," within the meaning of the provision of the bankrupt act, declaring that such debts shall not be discharged by proceedings in bankruptcy. (U. S. R. S., § 5117.)

The word "fraud," as used in said provision, means an active, express fraud, not one implied from an unjustifiable or illegal act.

(Argued May 20, 1879 ; decided May 27, 1879.)

APPEAL from order of the General Term of the Superior Court of the city of New York, affirming an order of Special Term, denying a motion to vacate an order of arrest herein.

The nature of the action and the facts appear sufficiently in the opinion.

*J. M. Guiteau*, for appellants. The words "fiduciary capacity" in the bankrupt act of 1867 have the same sense as the same words in the act of 1841. (*Cronan* v. *Cutting*, 104 Mass., 245; *Grover* v. *Clinton*, 8 N. B. R., 312; *Owsley* v. *Cobin*, 15 id., 489; *Neal* v. *Clark*, 95 U. S. R., 708; *Kime* v. *Graff*, 5 " The Reporter," 89.) The debts created

by " fraud " in the sense that word is used in said act (U. S. R. S., § 5117), are associated directly with debts created by embezzlement, and are of that class of fraudulent debts, and do not embrace implied fraud or fraud in law. (*Neal* v. *Clark*, 95 U. S. R., 704, 709.) The phase, " while acting in any fiduciary character," implies a fiduciary relation existing previously to or independently of the particular transaction from which the debt arises. (*Cronan* v. *Cotting*, 104 Mass., 245.) A discharge by virtue of said act, § 5119, releases the bankrupt from all demands in tort, such as trespass or trover, for wrongful conversion of property. (*Grover* v. *Clinton*, 8 N. B. R., 312; *Cole* v. *Roach*, 37 Tex., 413; *Chapman* v. *Forsyth*, 2 How., 202; *Cronan* v. *Cotting*, 104 Mass., 245; *Owsley* v. *Cobin*, 15 N. B. R., 489; *Kime* v. *Graff*, 5 " The Reporter," 489; *Woolsey* v. *Cade*, 15 N. B. R., 238; *In re Smith*, 18 id., 24.)

*C. Bainbridge Smith*, for respondents. The defendant's discharge in bankruptcy does not affect the order of arrest or operate to release the defendants from the plaintiffs' cause of action. (Rev. Stat. [U. S.], 993, § 5117.) The debt of the bankrupts was not only created by fraud, but while acting in a fiduciary character. (*White* v. *Platt*, 5 Den., 268; *Stand. Sugar R.* v. *Dayton*, 70 N. Y., 486.) The words " fiduciary capacity " have a broader meaning as used in the present bankrupt act than in the act of 1841. (*Ostell* v. *Brough*, 24 How. Pr., 274; *Sutton* v. *De Camp*, 4 Abb. [N. S.], 483; *Clark* v. *Pinkney*, 50 Barb., 226; *Duguid* v. *Edwards*, 50 id., 288; *German Bank* v. *Edwards*, 53 N. Y., 541.) Where there is a fraud in fact, or where the property has been misapplied by the person while acting in a fiduciary capacity, the debt or obligation is not released by a discharge in bankruptcy. (*Stoll* v. *King*, 8 How. Pr., 298; 1 Wait's Pr., 619.)

CHURCH, Ch. J. This is an appeal from an order refusing to vacate an order of arrest. The action is for converting

twenty-nine railroad bonds of $1,000 each, delivered by the plaintiffs to the defendant Clews, as collateral security for a letter of credit by the latter to the former upon a banking-house in London. There is a conflict in the affidavits. The defendant states that it was agreed, that he might, if he desired, hypothecate the bonds, but for the purposes of this appeal we shall assume that he held the bonds as pledgee, with no other rights in respect to them, than such as that relation entitled him to, and that the hypothecation or sale was wrongful, and entitled the plaintiffs to an action for conversion. The important question is whether the subsequent discharge of the defendant as a bankrupt, released him from the liability therefor. This depends upon the construction of section 5117 (U. S. R. S.), which reads as follows : " No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." ·

The question is whether this debt has been created by *fraud*, or *while acting in any fiduciary character* within the meaning of this statute. It is not alleged that there were any false representations or deceit, nor any device or trick made or practiced by the defendant to induce the plaintiffs to deliver the bonds, or enter into the arrangement. It was an ordinary commercial transaction, entered into as far as appears in good faith, and the only fraud proved or alleged, is such only as may be implied, by the violation of the duty resting upon the defendant, under the contract. We think that the term "fraud" used in this statute, means something more than this. It is used in connection with the word embezzlement, and imports an intentional and affirmative fraudulent act. It must be an active express fraud, and not one implied from an unjustifiable or illegal act.

The recent case of *Neal* v. *Clark* (95 U. S. R., 704) is in principal decisive upon this point. The court held that the "section means positive fraud, or fraud in fact, involving moral turpitude, or intentional wrong, as does embezzle-

ment, and not implied fraud or fraud in law which may exist without the imputation of bad faith or immorality."

It cannot be said in this case that the debt was *created by fraud*, in the sense contemplated by the bankrupt act. Nor do we think it was created "while acting in any fiduciary character." Upon the construction of these words there is some conflict of authority. In nearly all the cases the question has arisen in respect to factors, brokers, and agents. *In re Kimball* (6 Blatch., 292), NELSON, J., refused to discharge the bankrupt from arrest for a debt incurred as a commission merchant for failing to remit the proceeds of flour consigned to him for sale. The arrest was made pending the proceedings in bankruptcy, and the learned judge said : "I concur the more readily as the decision of the question by the district court extends in its operation and effect only to the matter of arrest, and does not affect the question ultimately to be determined." There are some other authorities to the same effect, but the decided preponderance of judicial opinion is adverse to this construction.

In *Chapman* v. *Forsyth* (2 How. U. S. R., 202), the court held that a factor who received the money of his principal was not a *fiduciary*, within the meaning of the bankrupt act of 1841. The language of that act excepted from the operation of the discharge, debts "created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity." McLEAN, J., in delivering the opinion, said : "If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies ; and indeed all cases where the law implies an obligation from the trust reposed in the debtor.    *    *    In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust.    *    *    The act speaks of technical trusts, and not one which the law implies from the contract."

It is claimed that the bankrupt act of 1867, by omitting

the particular trusts specified in the act of 1841, and insert-
ing only the general words "any fiduciary character," is
more comprehensive than the act of 1841.   But I think a
more reasonable inference is that the Supreme Court of the
United States having determined that these general words
meant only trusts of the character specified in the act of
1841, Congress deemed it necessary to insert them.   The
decision of the highest Federal court is authoritative upon
questions of federal cognizance, and this decision should
therefore be regarded as controlling.   This view was taken
by the Supreme Court of Massachusetts in *Cronan* v. *Cotting*
(104 Mass., 245), and in several circuit and district courts
of the United States.   (*Grover* v. *Clinton*, 8 Nat. Bank Reg.,
312; *Oeosley* v. *Colby*, 15 id., 489; *Keime* v. *Graf*, 5 Rep.,
489; *In re Smith*, 18 Nat. Bank Reg., 24.) · It is argued
that these cases apply to consignments of property to factors,
and property entrusted to agents with authority to sell, and
that they are therefore distinguishable from the case at bar,
but it seems to us that if there is any difference, it is in favor
of those cases, because a greater confidence and trust was
reposed in · them, than in this.   Here the relation rested
entirely in contract.   The defendant held the property as
collateral security with the legal right in a certain contin-
gency to sell it, and apply the proceeds upon his demand,
and if the contingency did not arise, he was under legal obli-
gation to return it to the plaintiff.   If he violated that obli-
gation he is liable for conversion of the property, and in a
general sense he violated a trust, but not in that particular
and technical sense which the bankrupt act contemplates.

·  Trust and confidence are reposed in nearly all commercial
transactions, and the precepts of strict business integrity,
regard every debtor as a *quasi* trustee for his creditors, but
the bankrupt act would have a very limited operation if the
language of this section embraced cases of such general fidu-
ciary incidents.

In *Cronan* v. *Cotting* (*supra*), the court suggests that the
phrase implies a fiduciary relation existing previously or

independently of the particular transaction from which the debt arises, and the words "while acting" are referred to in support of the suggestion. Confirmatory also of this view are the provisions of the bankrupt law which absolutely discharge debts for the conversion of personal property. (U. S. R. S., §§ 5067, 5119.)

It may be affirmed that in most, if not all cases of conversion, some element of fraud or breach of duty exists, in a greater or less degree, and if all such cases were intended to be excepted from the operation of the discharge, the provisions referred to would have no force.

The question will doubtless be regarded as an open one until definitely settled by the Supreme Court of the United States, but we are of opinion that the debt for which the defendant is sued, was discharged by the bankrupt act, and that he was not liable to arrest.

The order of the General and Special Terms of the Superior Court must be reversed, and the motion to vacate granted.

All concur.

Ordered accordingly.