AMARIAH H. BRADNER et al., Respondents, *v.* PETER O. STRANG et al., Appellants.

Prior to March 27, 1875, plaintiffs, who were partners doing business at Rochester, had had extensive business transactions with defendants, who were commission merchants in New York, and the parties had been in the habit of exchanging credits. Plaintiffs had sent to the defendants four notes to take up other paper about maturing, which notes defendants had negotiated and used. On that day defendant S. wrote to plaintiffs, stating in substance that they had not used said notes and had themselves paid the paper they were given to renew. And on April 2, 1875, said defendant wrote again asking for four other notes. These plaintiffs sent in reliance upon the statements that the other notes had not been used. Defendants received, and negotiated them using the proceeds. Soon after defendants failed; petitions in bankruptcy were filed against them and they were discharged, being then indebted to plaintiffs on all their accounts and transactions about $1,000 aside from the proceeds of the four notes, which having passed into the hands of *bona fide* holders, plaintiffs were obliged to pay. In an action to recover damages because of the false representation, *held* that plaintiffs were entitled to recover; that the representation was material; that defendants H., although not participants in the fraud, were liable *civiliter* therefor as it was perpetrated by their copartner in the transaction of the partnership business; and that the discharge in bankruptcy was no defense.

*Hennequin* v. *Clews* (77 N. Y. 429 ; 33 Am. Rep. 641) and *Neal* v. *Clark* (95 U. S. 704), distinguished.

Also *held*, that the state of the accounts between the parties at the time the last notes were sent was material only as bearing upon the *quantum* of damages.

Also *held*, that plaintiffs were properly allowed to testify that they sent the last notes in reliance upon said representations ; and that a refusal to permit the defendants H. to testify that they did not have any intention to defraud was not error ; nor was a refusal to allow defendants to testify for what purpose the last four notes were obtained.

On June 30, 1875, before the notes last sent became due, defendants rendered to the plaintiffs an account, in which the latter were credited with the proceeds of said notes, which account, although with knowledge of the

fraud, they retained down to the commencement of this action. *Held*, that as the damage did not arise until afterward, when plaintiffs were compelled to pay the notes, the fraud was not condoned or waived by the retention of the account, nor were plaintiffs barred thereby of their right to recover.

Plaintiff B. testified, without objection, that a few months after the failure he was told by defendant S. that when he got his discharge he would have the ability and disposition to make an honorable settlement with plaintiffs. Defendants' counsel requested the court to charge the jury to disregard such evidence. The court made no mention of it in its charge. *Held*, that the evidence was immaterial and the refusal to grant the request was not error.

*It seems* that if the evidence was regarded by defendants' counsel as prejudicial, it should have been objected to when offered.

(Argued May 3, 1882; decided May 30, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made December 31, 1880, which affirmed a judgment in favor of plaintiffs, entered upon a verdict, and affirmed an order denying a motion for a new trial. (Reported below, 23 Hun, 445.)

The nature of the action and the material facts are stated in the opinion.

*George H. Forster* for appellants. The representation that the notes were not used was not a material representation, nor did it affect the substance of the contract made in sending the notes sent in April. The mere untruth of the representation would not constitute a fraud had it been untrue. (*Johnson* v. *Taber*, 10 N. Y. 319; *Whitney* v. *Allaire*, 1 id. 305.) The plaintiffs must establish not merely the representation and its falsity, but that they relied on it and were deceived thereby, and also that the false representation was of some matter or thing material to the matter in and about which it was made. (*Masterton* v. *Beers*, 1 Sweeney, 406; *Dambman* v. *Schulting*, 75 N. Y. 55.) There is no ingredient of fraud in the case. (*Marsh* v. *Falker*, 40 N. Y. 566; *Meyer* v. *Amidon*, 45 id. 169; *Oberlander* v. *Spiess*, id. 175; *Wakeman* v. *Dalley*,

51 id. 27; *Stitt* v. *Little*, 63 id. 427; *Moore* v. *Ryder*, 65 id. 441.) A guilty intent was essential to plaintiffs' right to recover. (*Stitt* v. *Little*, 63 N. Y. 427, 433.) The court erred in charging that the defendants Holland were liable civilly in this action, notwithstanding their discharge in bankruptcy. (U. S. R. S., § 5117; *Hennequin* v. *Clews*, 77 N. Y. 429; *Palmer* v. *Hussey*, 13 N. Y. Weekly Dig. 514; *Chapman* v. *Forsyth*, 2 How. [U. S.] 202; *Neal* v. *Clark*, 95 U. S. 704.)

*William F. Cogswell* for respondents.

EARL, J.   This action was brought by the plaintiffs to recover damages which they allege they sustained in consequence of the false and fraudulent representations of the defendants. The defendants in their answer, among other things, denied the alleged fraud and alleged that they had been discharged in bankruptcy.   The material facts of the case are as follows:

In the years 1873–4–5 the plaintiffs, under the firm name of Lowery & Bradner, were dealers in wool and sheepskins at Rochester, and the defendants, under the firm name of Strang & Holland Bros., were commission merchants in the city of New York.   During the years mentioned the plaintiffs had extensive business transactions with the defendants, sending them large quantities of wool to be sold upon commission, and during the same time it was the habit of the parties to exchange credits, and they had with each other large and numerous financial transactions.   They drew drafts on each other, and the plaintiffs, from time to time, sent their notes to the defendants to be used by them in their business.   On the 1st of March, 1875, there were a number of drafts outstanding, drawn by the plaintiffs upon and accepted by the defendants, and at the same time there were eight notes outstanding and running to maturity which had been made by the plaintiffs and sent to the defendants, and which had been negotiated by the defendants. On the 1st of March the defendants wrote the plaintiffs a letter requesting them to make and forward six notes dated respectively February 1, 9, 15, 20, 23 and 26, each at four

months and for a little more than $4,320, to meet six other notes of the plaintiffs described in the letter which would fall due in the month of March. They were requested to draw all the notes payable to their own order at the office of the defendants in the city of New York. In response to that letter they immediately made four notes, one for $4,325.50 dated February 1, one for $4,326.25 dated February 9, one for $4,327.13 dated February 15, and another for $4,327.15 dated February 20, all at four months, payable to their own order at the office of the defendants in the city of New York, and they indorsed the notes and sent them to the defendants. Before the 27th day of March the defendants had negotiated and used those notes. On the 27th of March the defendants wrote another letter to the plaintiffs, the letter being written by the defendant Strang and addressed to the plaintiff Lowery, in which it was stated "the notes we have received are all good, only we can't get money on them alone, and in the meantime we have paid about $30,000 of your notes which these last were given to renew in part;" that "we have $16,000 worth of notes not used;" that "you have notes coming due early in April and if you are going to pay them you had better arrange to do it." On the 2d day of April the defendants again wrote to the plaintiffs, the letter being signed and addressed in the same way as the prior one, stating that "your notes which have recently run off I might get renewed if you would send me say four notes having about three months to run, and payable at the Metropolitan National Bank, New York. I might use them. Have them for about $4,000 each, but let the amounts be odd," and that "I dare not offer the notes we have of yours where the last run off were used, because the place where these are payable is at our office, and it would put them on inquiry at once."

In pursuance of the request contained in this letter the plaintiffs sent to the defendants four notes, one dated March 13, 1875, for $4,850, one dated March 14, for $4,951.25, one dated March 16, for $4,860.30, and another dated March 20, for $4,970, all at four months, payable to their own order at

the Metropolitan National Bank, New York, and indorsed by them. The defendants received those notes and negotiated them, and received the proceeds thereof. On the 4th day of June thereafter, the defendants being insolvent failed, and petitions in bankruptcy were filed against them on the 3d day of July thereafter, and in June, 1877, they received their discharges in bankruptcy. At the time of their failure the defendants were indebted to the plaintiffs on all the accounts and transactions between them about the sum of $1,000, aside from the proceeds received by them upon the four notes last above mentioned, which notes having passed into the hands of *bona fide* holders, the plaintiffs were subsequently obliged to pay. The plaintiffs claim that the defendants falsely represented in their letters of March 27, and April 2, that the four notes which they had sent in response to the letter of March 1, had not been used, and that in reliance upon such representations they made and sent to the defendants the four notes in response to the letter of April 2, and that they were damaged by the false representations to the amount of the sum which they were obliged to pay upon the four notes, which, together with interest at the time of the trial, amounted to $17,518.86.

We think there was evidence sufficient to establish plaintiffs' cause of action. It is clear and undisputed from the evidence that on the 27th of March and on the 2d of April the defendants had negotiated and used all the notes which they had received from the plaintiffs.

It appears that sometime about the 1st of December, 1874, the plaintiffs sent to the defendants four notes of $4,000 each, which fell due respectively March 5, 8, 10 and 13, 1875. Those notes were credited to the plaintiffs in the account kept by the defendants with them December 7, 1874. The defendants claim that they had not used those notes, and that those were the $16,000 of notes not used, referred to in the letters of March 27 and April 2. We cannot assent to this claim. There is no proof to sustain it, and the just inference from all the evidence is against it. It cannot be inferred from any thing in the case that the defendants held notes from about

the 1st of December until about the 1st of April without using them, and without notifying the plaintiffs that they had not used them. It does not appear where those notes were payable. They were mentioned in the letter of March 1, as notes soon to mature, which would have to be paid either by the plaintiffs or defendants, and the new notes requested in that letter were to cover those four notes, and two others to fall due later. The reference in the letter of March 27, to the " $16,000 worth of notes not used " must have been to the four notes sent in response to the letter of March 1, which were the last notes preceding the 27th of March, and not to the four notes of $4,000 each, which were then past due, and had probably been paid and taken up by the defendants. It is true that the four notes sent in response to the letter of March 1 amounted to more than $16,000, but the amount was sufficiently accurate to convey to the minds of the plaintiffs a description of the notes intended. Again, it is clear that in the letter of April 2, Strang intended to convey the impression to the plaintiffs that the four notes not used were those last sent in response to the letter of March 1, because he assigns, as a reason for not using them, that they were payable at the office of the defendants, and those notes were so payable.

We are unable to perceive that it would aid the defendants if they could show that they had reference in the letters when speaking of notes not used to the four notes of $4,000 each, because it is equally clear upon the evidence that those four notes had been used prior to the 27th day of March. They must have been negotiated, and in the hands of other parties, as they are charged in one of the accounts rendered by the defendants as paid by them. One is charged as paid on the 8th of March, the day it fell due, and the others are charged under date of March 30, and they were undoubtedly paid as they fell due.

It cannot be successfully claimed that the false representations contained in the two letters were not material, or that the plaintiffs did not have the right to rely upon them. It does not appear that the plaintiffs were bound or under any obligation to make and deliver the last four notes, and it does not

appear that they would have done so, but for the false repre-
sentations.   It appears that they were willing to send four
notes to the defendants for upwards of $4,000 each, and after
they had sent such notes they were induced to send four more
by the false representation that those sent had not been used.
Such a representation, inducing action by parties to whom it
was made, is unquestionably material.

It matters not what the state of the accounts between the
parties was at the time the last notes were sent.   It is clear
that the plaintiffs were then not actually indebted to the
amounts of those notes.   The state of the accounts between
the parties has real importance only as it bears on the *quantum*
of damages.   If the plaintiffs actually owed the defendants the
amount of the notes and were never obliged to pay on them
any more than they honestly owed the defendants, then they
were not materially damaged by the fraud.   But it turned out
that when the defendants failed and when the plaintiffs were
obliged to pay the notes they did not owe the defendants any
thing and were damaged by their fraud to the full amount of
the payments upon the notes.

It matters not that the plaintiffs were credited with the four
notes sent in response to the letter of March 1, in an account
rendered to them on March 31, 1875, before the last notes were
sent, because they testified that they did not infer from the ac-
count that the notes had been used, but relied upon the state-
ments contained in the letters that they had not been used.

On the 30th of June, 1875, the defendants rendered to the
plaintiffs a statement of the accounts between them, in which
the plaintiffs were credited with the proceeds of the notes last
sent, and the plaintiffs retained that account down to the com-
mencement of this action, all the time knowing of the fraud
which they allege had been perpetrated upon them.   The defend-
ants, therefore, claim that the account so rendered became an
account stated and that they thus accepted a credit for the pro-
ceeds of the notes and cannot, therefore, claim any thing on ac-
count of the alleged fraud.   At the date when that account
was rendered the notes had not fallen due, and if the defend-

ants had paid them no damage would have been caused to the plaintiffs by the fraud. The damage arose afterward when the plaintiffs were obliged to pay the notes. By retaining the account, therefore, which gave the plaintiffs no benefit whatever, the fraud was not condoned or waived, and it is impossible to see how they were barred in any way of their right to recover damages on account thereof. Merely crediting the notes in the account did not pay them and certainly did not satisfy any damages caused to the plaintiffs by the fraud.

The defendants Holland appear to have been entirely guiltless of any participation in the fraud perpetrated by Strang, but it is elementary law that they are chargeable and legally responsible for the fraud perpetrated by their partner in the transaction of the partnership business and the conduct of the partnership affairs.

The claim of the plaintiffs for damages on account of the fraud committed upon them by the defendants was not discharged by the bankruptcy proceedings. Debts only are provable in bankruptcy and, therefore, only can be discharged in bankruptcy. (U. S. R. S., §§ 5114, 5117, 5119.) This claim for damages could no more be discharged in bankruptcy than a claim for damages caused by libel, slander or assault and battery. (*Morse* v. *Hutchins,* 102 Mass. 439 ; *In re Devoe,* 2 N. Bank. R. 27.) The cases of *Hennequin* v. *Clews* (77 N. Y. 429 ; 33 Am. Rep. 641), and *Neal* v. *Clark* (95 U. S. 704) do not apply to a case like this. The defendants Holland, while they did not actually participate in perpetrating this fraud, are liable *civiliter* for the fraud to the same extent as if they had participated. Therefore the trial judge properly refused to nonsuit the plaintiffs.

During the progress of the trial the counsel for the defendants took numerous exceptions to rulings upon questions of evidence, and to the charge and refusals to charge, as requested, the most important of which, not substantially covered by what has already been said, will be briefly noticed. There was no error in allowing the plaintiffs to testify that in sending the last four notes they relied upon the statements contained in the

letters of March 27 and April 2. Such evidence has fre-
quently been held admissible. There was no error in refusing
to permit the defendants Holland to testify they did not have
any intention to deceive and defraud the plaintiffs in obtaining
the four notes, because there was no claim that they personally
did obtain them, or that they knew any thing about the con-
tents of the two letters, or that they, or either of them, had
any fraudulent intent. The only fraudulent intent relied upon
by the plaintiffs was that of the defendant Strang, which was
imputable to the other defendants. There was no error in re-
fusing to allow either of the defendants to testify for what
purpose the last four notes were obtained. A purpose is dis-
closed in the letters, and it would not aid the defendants to
show that the notes were obtained for a different purpose, and
so long as the fact remained that the notes were obtained by
fraud, it is not perceived how the undisclosed purpose for
which they were obtained could be material.

The plaintiff Bradner testified that he saw Strang a few
months after the failure of the defendants and was told by him
that when he got a discharge in bankruptcy, if he got one, he
would have the ability and disposition to make an honorable
settlement with the plaintiffs. This evidence was not objected
to by the defendants. The counsel for the defendants re-
quested the court to charge that the jury should disregard such
evidence, as that conversation was not a new promise and was
not legally binding upon Strang or either of the other defend-
ants. No allusion was made to that evidence in the charge of
the judge. It did not show a new promise and was wholly
immaterial and irrelevant. It is impossible to perceive how
the evidence could have harmed the defendants, and while the
court could properly have granted the request, it is not per-
ceived that the refusal to grant it was prejudicial to the de-
fendants. If they regarded the evidence as prejudicial they
should have objected to it at the time it was offered.

The exceptions contained in the case are very numerous, but
we have carefully examined and considered them all, and with-
out further giving any of them particular notice, it is sufficient

to say that we are of opinion that no one of them is well founded.

The judgment should be affirmed, with costs.

All concur. except DANFORTH, J., taking no part and TRACY, J., absent.

Judgment affirmed.