WILLIAM F. LAWRENCE et al., Respondents, v. ARVIN W. HARRINGTON, Appellant.

Conversion is not a "fraud" within the meaning of that word as used in provision of the Bankrupt Act (U. S. R. S. § 5117) which provides that "no debt created by fraud or embezzlement of the bankrupt or by his defalcation as a public officer or, while acting in a fiduciary character, shall be discharged under this act."

The fraud intended by the law is a positive fraud, or fraud in fact, as distinguished from constructive fraud, founded upon some breach of duty.

The expression "fiduciary character," as used in said provision, refers to cases of technical trust, actually and expressly constituted, and does not include those which the law implies from the contract of the parties. *Bradner* v. *Strang* (89 N. Y. 299), distinguished.

A promise, by which a debt discharged in bankruptcy is renewed, must be express and distinct; it cannot be implied or inferred; and so, partial payments will not revive the debt in this respect.

The rule in this respect is different from that applied to the defense of the Statute of Limitations.

In an action to recover for moneys expended for the use of a firm, of which defendant is the survivor, it appeared that plaintiffs loaned to defendant's firm their promissory notes. Subsequently said firm filed a petition in bankruptcy, were adjudged bankrupts, and were discharged. Two of the notes were thereafter renewed by new notes, made by plaintiffs, to the order of defendant's firm, and by them indorsed and passed to the bank holding the original notes, and some payments were made to plaintiffs by defendant's firm upon the account. *Held*, that a new promise was to be implied, from the indorsement of the renewal notes, to pay so much of the debt, but not to pay the balance represented by the other notes; also, that the payment on account was not sufficient to authorize a finding of a promise to pay the residue of the debt.

After the discharge in bankruptcy, defendant wrote to plaintiffs, letters containing these statements: "we do not calculate you will suffer any loss by us;" "we will do the best we can and all that is in our power to save you harmless." *Held*, that these statements did not indicate an intention to pay at all events.

Plaintiffs delivered to defendant's firm their promissory note to procure it to be discounted, and send to them the proceeds; said firm received and appropriated the proceeds to their own use. Two of the notes loaned, as above stated, were loaned to take up the note so appropriated. *Held*, the fact that said notes had their origin in the conversion of the proceeds of the former note did not take them out of the operation of the discharge in bankruptcy.

The renewal notes matured in 1878, and were then paid by plaintiffs. In 1883 and 1884 work was done by defendant's firm for plaintiffs, under an agreement that one-half of the amount should be credited upon the old accounts, and credits were accordingly given. *Held*, that such credits might be considered as payments, which would take the case out of the operation of the Statute of Limitations.

(Argued October 14, 1890; decided October 28, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 14, 1888, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial without a jury.

This action was commenced July 8, 1887, and was for moneys expended for the use of the firm of Rousseau & Harrington, of which the defendant is the surviving partner. The defense pleaded was the discharge of said firm in bankruptcy, and that the claim was barred by the Statute of Limitations.

The petition in bankruptcy was filed on November 24, and said firm were adjudicated bankrupts on December 3, 1877.

Prior to November, 1877, the plaintiffs had loaned said firm their promissory notes, payable to said firm's order as follows: Note due December 28, 1877, $337.18; note due December 31, 1877, $334.25; note due February 26, 1878, $410.73; note due March 3, 1878, $339.27.

Under the agreement relating to these notes defendant's firm should have paid them. They failed to do so, and the two first-named notes were paid by plaintiffs at maturity. The two latter were renewed, and when the renewal notes matured on May 28 and June 4, 1878, plaintiffs paid them.

In addition to the above notes the complaint set out several small payments made for the defendant's firm subsequent to the filing of the petition, and which were not affected by the discharge in bankruptcy, and for which defendant admitted his liability provided they were not barred by the Statute of Limitations.

The trial court found as facts that, by reason of said payments, said Rousseau & Harrington, on January 4, 1879, "were indebted to plaintiffs in the sum of $1,483.31, no part of which has been paid except $203.48, paid on account on and prior to July 9, 1881, and the sum of $96.36, paid on account during the years 1883 and 1884."

"That after November 24, 1877, said defendant and Rousseau & Harrington made frequent promises, both oral and written, to pay the amount of their indebtedness to plaintiffs."

The court further found "that on or about July 10, 1877, said Rousseau & Harrington obtained and appropriated to their own use the proceeds of a promissory note made by plaintiffs, and by them entrusted to said Rousseau & Harrington, amounting to $671.43, which amount plaintiffs were obliged to pay." And it appeared that plaintiffs, upon several occasions, sent their notes to said firm, who indorsed them and procured them to be discounted at a bank, and sent the proceeds to the plaintiffs.

That the note mentioned in the last quoted finding was sent to said firm for such purpose, and that the two notes hereinbefore mentioned as falling due December 28 and 31, 1877, were loaned by plaintiffs to said firm to take up the note of $671.43.

The court refused to find that no payments had been made by defendant or his firm after May 31, 1881, and that no agreement had ever been made by defendant or his firm after the commencement of the bankruptcy proceedings to pay plaintiffs' claim.

To which refusals, as well as to the findings above quoted, the defendant excepted.

*G. B. Wellington* for appellant. Part payment will not revive a debt discharged in bankruptcy. To revive such a debt the debtor must make a clear, distinct and unequivocal promise to pay. The expression of an intention is not sufficient nor is evidence of a "wish" on the part of the debtor

enough. (*Elwell* v. *C.*, 136 Mass. 102; *Bolton* v. *King*, 105 Penn. St. 78; *Merriam* v. *Bayley*, 1 Cush. 77; *C. Inst.* v. *Littlefield*, 6 id. 210; *Stark* v. *Stinson*, 23 N. H. 259; *Viele* v. *Ogilvie*, 2 Greene, 326; *Yates* v. *Hollingsworth*, 5 H. & J. 216; *Meech* v. *Lamon*, 103 Ind. 515; *Stern* v. *Nussbaum*, 47 How. Pr. 489; *Allen* v. *Ferguson*, 18 Wall. 1; *Dusenbury* v. *Hoyt*, 50 N. Y. 523; *Harper* v. *Farley*, 53 id. 442; *Porter* v. *Porter*, 31 Me. 109; *Dearing* v. *Moffit*, 6 Ala. 776; *Ingersoll* v. *Rhodes*, Hill & Den. Supp. 371; *Scouton* v. *Eislord*, 7 Johns. 36; *Goldman* v. *Abrahams*, 10 Wkly. Dig. 108; *Wakeman* v. *Sherman*, 9 N. Y. 85; *Stebbins* v. *Sherman*, 1 Sandf. 510; *Nelson* v. *Stewart*, 54 Ala. 115; *Reed* v. *Frederick*, 8 Gray, 230; *Shapley* v. *Abbott*, 42 N. Y. 443; *Hennequin* v. *Clews*, 77 id. 427; *Palmer* v. *Hussy*, 87 id. 306; *Stratford* v. *Jones*, 97 id. 589; *Brander* v. *Holland*, 23 Hun, 448; U. S. R. S. §§ 5067, 5070; *Craft* v. *Mott*, 4 N. Y. 604; *Mace* v. *Wells*, 7 How. [U. S.] 272.) The Statute of Limitations is a bar. (*Harper* v. *Farley*, 53 N. Y. 442; *McLaren* v. *Marsh*, 36 id. 88; *Merriam* v. *Baylcy*, 1 Cush. 77; *Wakeman* v. *Sherman*, 9 N. Y. 85; *Bush* v. *Barber*, 8 Johns. 407; 9 N. Y. 92; *Green* v. *Disbrow*, 79 id. 9.)

*James M. Hunt* for respondents. The Statute of Limitations is not a bar to the recovery in this action. (Code Civ. Pro. § 395; *F. N. Bank* v. *Ballou*, 49 N. Y. 155, 159; *Green* v. *Disbrow*, 79 id. 1, 9; *McNamee* v. *Tenny*, 41 Barb. 495; *Fiske* v. *Hibbard*, 13 J. & S. 331; *Smith* v. *Velie*, 60 N. Y. 495.) The proceedings in bankruptcy discharged neither the whole nor any part of the indebtedness sought to be recovered. (*Savory* v. *Stocking*, 58 Mass. 607; *Hornthol* v. *McRea*, 67 N. C. 21; *Stillwell* v. *Coppe*, 4 Den. 225; *Otis* v. *Gazlin*, 31 Me. 567; *Knapp* v. *Hoy*, 57 Iowa, 591; 6 Bin. 256; U. S. R. S. § 5117; *Bradner* v. *Strang*, 114 U. S. 555; 89 N. Y. 299; 23 Hun, 299; *White* v. *Platt*, 5 Den. 269, 274; *Barber* v. *Stearling*, 68 N. Y. 267, 273; *Hennequin* v. *Clews*, 77 id. 429; Laws of 1882, chap. 324; *Arnold* v. *Downing*, 11 Barb. 554, 557; Code Civ. Pro. § 395; *Smith*

v. *Ryan*, 66 N. Y. 352, 355; *Harper* v. *Fairley*, 53 id. 442, 444; *Barger* v. *Durvin*, 22 Barb. 68, 70; *Payne* v. *Slate*, 39 id. 634, 637; *Townsend* v. *Ingersoll*, 43 How. Pr. 276; *Decker* v. *Kitchen*, 19 Wkly. Dig. 379; *Lockwood* v. *Thorne*, 11 N. Y. 170.) An error in the computation of interest should be corrected on motion in any event. (*Leonard* v. *C. S. N. Co.*, 48 N. Y. 48.)

BROWN, J. There is no dispute between the parties but that the two notes which matured February twenty-sixth and March third respectively, were covered by the discharge in bankruptcy, but the respondents assert that the other notes having had their origin in the conversion by defendant's firm of the proceeds of the note of $671 on July 10, 1877, were taken out of the operation of the discharge in bankruptcy by the 33d section of the Bankrupt Act (R. S. § 5117), which declares that "no debt created by fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in a fiduciary character, shall be discharged under this act."

This question, we think, is settled by authority against the respondents' contention. (*Hennequin* v. *Clews*, 111 U. S. 676; 77 N. Y. 427; *Neal* v. *Clark*, 95 U. S. 704; *Chapman* v. *Forsyth*, 2 How. [U. S.] 202; *Palmer* v. *Hussey*, 87 N. Y. 303; *Stratford* v. *Jones*, 97 id. 586; *Cronan* v. *Cotting*, 104 Mass. 245.)

These authorities have established the rule that conversion is not a "fraud," within the meaning of the Bankrupt Act, and that the expression "fiduciary character" has reference to cases of technical trust actually and expressly constituted, and does not include those which the law implies from the contract of the parties.

The fraud intended by the law is a positive fraud or fraud in fact, as distinguished from constructive fraud, founded upon some breach of duty.

The case of *Bradner* v. *Strang* (89 N. Y. 299; 114 U. S. 555), is not in conflict with the authorities cited. In that case certain promissory notes were obtained from the plaintiffs by

the defendants by false representations, and hence the case was one of positive fraud. It was clearly distinguished in this court and in the Supreme Court of the United States from the cases I have cited, and it illustrates the class of fraudulent debts and obligations which it was intended should not be discharged by the bankrupt law. It has no application to the present case.

The defendant's firm came rightfully into possession of the note and its proceeds. They were the plaintiffs' agents to procure its discount. They violated their duty in appropriating to their own use the proceeds, and were guilty of conversion in so doing, but within the principle of the cases cited the debt was discharged by the bankruptcy proceedings.

To overcome, however, the effect of the discharge in bankruptcy, the plaintiffs gave evidence from which the court found as a fact a new promise to pay the debt made by the defendant and his firm after the filing of the petition in bankruptcy.

As to the two notes which matured February twenty-sixth and March third, we think this finding is sustained.

These notes were renewed on or about February 25, 1878, by new notes made by the plaintiffs to the order of Rousseau & Harrington, and by that firm indorsed and passed to the bank holding the original notes, and having been given for the accommodation of the defendant's firm, we think the new promise to pay is to be implied from the contract of indorsement on the renewal notes. And such promise saved the debt from the operation of the discharge. (*Stillwell* v. *Coope*, 4 Den. 225; *Lewis* v. *Wilmarth*, 7 Allen, 463.)

But as to the balance of the claims we are of the opinion that the finding is without evidence to support it.

The General Term appear to have been of the opinion that a payment made upon the account in May or July, 1881, revived the same from the bankrupt discharge.

In this we think that the learned court erred.

All the authorities agree that a promise by which a discharged debt is renewed, must be express and distinct. It cannot be implied or inferred; and so it was held that a pay-

ment of interest by the maker on a promissory note fro which he had been discharged in bankruptcy, did not revi his liability on the note. (*Inst. for Saving* v. *Littlefield,* Cush. 210.)

That payment of a part of a note so discharged and th indorsement thereon by the debtor of the sum paid was n sufficient to authorize a finding of a new promise to pay th residue of the debt. (*Merriam* v. *Bayley,* 1 Cush. 77 ; *Alle* v. *Ferguson,* 18 Wall. 1.)

A different rule prevails in case of a debt discharged i bankruptcy from that applied to the defense of the Statute o Limitations. In the latter case payment of a part of the deb is regarded as an acknowledgment of the existence of the debt and the law implies a promise to pay the residue. But in th case of a debt discharged in bankruptcy a promise cannot b inferred, but must be express, and so all the cases agree tha partial payments will not revive the debt. (Hilliard on Bank ruptcy, 266, 267.)

"Nothing," said Judge HUNT, in *Allen* v. *Ferguson,* "i sufficient to revive a discharged debt unless the jury ar authorized by it to say that there is an expression by the debtor of a clear intention to bind himself to the payment o the debt."

It follows from these authorities that a new promise could not be implied from the payment referred to.

The other evidence in the case showed only a promise to do certain work for the plaintiffs and apply it upon the account. This could not be construed into a promise to pay the debt in any other way than that stipulated in the agreement.

And the expressions contained in defendant's letters to the effect that "we do not calculate you will suffer any loss by us," "we will do the best we can and all that is in our power to save you harmless," are not indicative of an intention to pay at all events. (*Allen* v. *Ferguson, supra; Elwell* v. *Cumner,* 136 Mass. 102.)

In the cases cited, language of similar import was used, but the court held it insufficient to revive the debt. We are of

the opinion that the finding of a new promise to pay the indebtedness is not supported by the evidence except as to the two notes renewed in February, 1878. And as to these notes the question still remains whether the cause of action thereon was not barred by the Statute of Limitations.

The renewal notes matured May 28 and June 4, 1878, and were then paid by the plaintiffs, and the cause of action thereon was then complete.

In the years 1883 and 1884 work was performed by defendant's firm for the plaintiffs under an agreement that the amount thereof should be credited upon the old account, and credits were accordingly given, and the question now is whether such credits may be considered as payments which will take the case out of the operation of the Statute of Limitations.

We are of the opinion that they should have that effect. A payment generally upon a debt within six years before the commencement of an action thereon will take it out of the statute, and it makes no difference whether the payment is in money or goods. The claim of the appellant is that these credits having been made under a special agreement have no greater effect than that stipulated in the agreement under which the work was performed, and in the absence of any evidence as to the refusal of the defendant to fulfill that agreement they cannot be taken as an acknowledgment of the debt, or as evidence of a promise to pay in money.

There would be some force in this argument if the debt had been barred by the statute at the time the work was performed; but the debt was at that time an existing obligation enforceable against defendant's firm. The evidence was that defendant's firm did the work and agreed to allow plaintiffs to credit one-half thereof on the old account.

There was no condition attached to the credit, and it must be treated as if the payment had been made in money. Its effect was to arrest the operation of the statute and to enlarge the time during which an action upon the debt could be brought. This action was commenced within six years after

the first credit, made in 1883, and the defense of the Statute of Limitations was, therefore, properly overruled.

The judgment should be reversed, a new trial granted, with costs to abide the event, unless the respondents shall, within twenty days, stipulate to reduce the judgment by deducting therefrom $671.43, with interest thereon from January 4, 1879, in which case the judgment so reduced is affirmed, without costs to either party in this court.

All concur.

Judgment accordingly.