MARY W. SCHEPER, as Executrix, etc., of ALLRICH SCHEPER, Deceased, Appellant, *v.* LYDIA R. BRIGGS (formerly LYDIA R. BARTON) and JOSHUA W. DAVIS, as Administrators, etc., of SAMUEL BARTON, Deceased, Respondents.

*Action on an indebtedness discharged in bankruptcy — proof of a subsequent promise to pay — what promise in writing is insufficient to sustain the action.*

Under the practice prevailing in the State of New York a creditor may bring an action upon a debt discharged in bankruptcy and prove in avoidance of the discharge a new promise of payment made by the debtor; such new promise must, however, under the requirements of chapter 324 of the Laws of 1882, be in writing.

A letter written by a debtor who has been discharged in bankruptcy, stating that it was his duty to devote the profits of his business to the discharge of his debts, and that he proposed to pay the debt in question before paying other debts, but from which it is evident that this intention was to be carried out only in case his affairs should continue so prosperous that he would be easily able to do so, and that the debtor did not intend to bind himself by any promise which would interfere with the business in which he was engaged or with the use of his money as he might see fit to use it after the letter was written, does not constitute a promise to pay which will revive the debt.

APPEAL by the plaintiff, Mary W. Scheper, as executrix, etc., of Allrich Scheper, deceased, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 22d day of September, 1897, upon the report of a referee directing the dismissal of the complaint.

*Donald McLean,* for the appellant.

*A. E. Lamb,* for the respondents.

RUMSEY, J. :

Before the year 1873 Samuel Barton and one Henry W. Allen were copartners in business in the city of New York under the firm name of Barton & Allen. At that time the plaintiff and one Turnbull were executors of the estate of Allrich Scheper, and as such executors they had deposited with the firm of Barton & Allen a large quantity of bonds and securities of the estate which Barton & Allen converted to their own use and sold, the proceeds received by them amounting to about $75,000. On the 22d day of October, 1874, Barton received a discharge in bankruptcy from the United States District Court in the southern district, and he was thereby duly discharged from all his debts. On the 8th day of July, 1882, Barton wrote to Turnbull a letter, advising Turnbull that he had that day placed on his books to Turnbull's credit the sum of $10,000 as an installment of his half of the debt due to Scheper's estate by the · late firm of Barton & Allen at the time of their failure, and authorizing him to draw for that amount at any time. The letter then proceeded as follows : " I hope soon to supplement this with other payments until my half of the obligation, with interest, is fully discharged. I have every reason to be grateful for my success in business during the last two years. In that time I have been able to thoroughly re-establish myself, and also to accumulate ample capital for my business. Having done this, I feel it to be my duty to devote all my profits, over and above my family and personal expenses (which are not large), to the payment of my old debts ; and inasmuch as there were circumstances connected with your claim which justly entitle you to a preference over the other creditors, I propose to pay you first. The total amount of your claim, with interest at 6 per cent, is about $75,000. The balance of my proportion (say $27,500) I think I can almost guarantee you before the first of January. Of course it will depend altogether upon my business, but unless that falls off very materially, I can easily pay you by that time." The letter then continued : " Now, however, my prospects are entirely changed, and, if my life is spared, I can reasonably hope, within one or two years, to realize my only ambition, which is to pay off half the debts of my old firm, with interest." Barton subsequently made further payments on account of this debt, but died before the whole account which he proposed

to pay had been fully paid. Afterwards the plaintiff brought this action against his administrators upon the original debt. The administrators interposed several defenses, of which the only one necessary to be examined here is the discharge in bankruptcy of Barton on the 22d of October, 1874. This discharge, having been proved, was clearly effectual as a discharge of the cause of action for the conversion of the bonds. (*Lawrence* v. *Harrington*, 122 N. Y. 408; *Hennequin* v. *Clews*, 111 U. S. 676.) But the plaintiff, to avoid the effect of the discharge, insists that the letter, the material portions of which are given above, operated as a new promise to renew the old debt. In this contention she was not sustained by the referee, and the question presented is whether the conclusion of the referee in that regard was correct. The legal obligation of a bankrupt upon any debt proved under the act is, by force of positive law, discharged, and the remedy of the creditor existing at the time of the discharge is absolutely and entirely taken away. No cause of action is left to the creditor upon the debt thus discharged, and it would seem to be a logical conclusion that, if a new promise to pay the debt was made, the action against the bankrupt must be brought upon the new promise, and not upon the original debt, because, the new promise being the real binding obligation, constitutes the only cause of action. If this rule of pleading had been adopted by the courts it would be quite easy to understand that no cause of action would lie upon the discharged debt by reason of any subsequent acknowledgment unless that acknowledgment constituted a contract, either expressly or by necessary implication; and in all probability there would have been no confusion upon that point. But, unfortunately, the logical rule of pleading has never been insisted upon, in this State, at least, and it has been held that, although the old debt has been discharged, yet the creditor may bring his action upon it, and prove the new promise in avoidance of the discharge. (*Dusenbury* v. *Hoyt*, 53 N. Y. 521.) But while this must be regarded as the settled rule of pleading in this State, it does not affect the rule which has been established as to the essentials of a writing which shall revive the old debt. By chapter 324 of the Laws of 1882, it is enacted that no subsequent or new promise to pay a debt, discharged in bankruptcy, shall revive the debt unless that promise shall be in writing. The words of this statute are somewhat sig-

nificant as marking the distinction which exists between an acknowledgment of the debt which is sufficient to take it out of the Statute of Limitatations, and the new promise required to revive the debt which has been destroyed by the discharge in bankruptcy. The first requires simply an acknowledgment that the debt is still existing. This may be made by a writing or by a part payment, which necessarily implies that fact; but the second requires something which is equivalent to a promise, and although that promise need not be expressed, it must be one which is necessarily implied from the words of the writing. Such is the well-settled rule established by the authorities of the United States and of this State. (*Allen & Co.* v. *Ferguson*, 18 Wall. 1; *Lawrence* v. *Harrington*, 122 N. Y. 408.) In the case first cited it was held that nothing was sufficient to revive a discharged debt unless it contained an expression by the debtor of a clear intention to bind himself to the payment of the debt, and that seems to be the rule which is established by all the authorities. Consideration of the letter relied upon by the plaintiff here shows quite clearly that no such intention is to be implied. It is very evident that Mr. Barton appreciated the obligation that was upon him to make good the conversion of these securities, and that he finally expected to be able to do it, and that he had in mind that he would do it at some future time, but the letter will be searched in vain for any expression which shows that he intended to make an absolute promise to do any such thing. He said that it was his duty to devote his profits to the payment of his debts, which undoubtedly was true, and that he proposed to pay Turnbull first. But it is quite evident, from reading the whole letter, that this proposal was intended to be carried out only in case his affairs should continue so prosperous that he would be easily able to do so, and that he did not intend to bind himself by any promise which would interfere with the business in which he was engaged or with the use of his money as he saw fit after the letter was written. There is nothing in the subsequent letters to add to the force of the one quoted; but, while there is apparent in the whole of them a hope that he may be able to pay, there is not to be drawn from them an intention which should amount to a promise to be bound to the payment of this debt from which he

had been relieved. The learned referee was clearly correct in the conclusion which he reached, and his judgment must be affirmed, with costs.

VAN BRUNT, P. J., BARRETT, PATTERSON and MCLAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.