## In re BURCHFIELD.

District Court, W. D. New York. March 8, 1929.

Donnelly, O'Neil & Lindal, of Buffalo, N. Y., for bankrupt.

August Becker, of Buffalo, N. Y., for creditor.

ADLER, District Judge. This is a motion made in behalf of the bankrupt for an order staying further proceedings on a judgment in a suit in the Supreme Court of Erie County, in which Albert E. Johnson was plaintiff, and Russell O. Burchfield, the bankrupt, was defendant. The facts in the Supreme Court action are as follows:

The bankrupt, Burchfield, was the agent and brother-in-law of the plaintiff, Johnson. Plaintiff was a hog buyer at the stockyards in the city of Buffalo. The bankrupt for a number of years acted in the capacity of his general manager and bookkeeper, and also assisted in the buying of the hogs. It appears that the bankrupt obtained the bills from the persons from whom he purchased hogs, and he would then in some instances add various amounts to the bills and collect those amounts for the customers in cash. This was done with the knowledge and approval of the plaintiff. The plaintiff contends that only so much money was to be obtained by bankrupt in this way as to pay running expenses and the agreed salary of the bankrupt. During the years 1922 to 1926, inclusive, the sum of $47,311 was added to these bills and received by the bankrupt. The plaintiff claims that by virtue of their relationship and association in business for many years he trusted the bankrupt to the extent of signing checks for the bills presented to him, with the amounts added to them, and that he did not ask the bankrupt for any statement of the account between them.

It was conceded on the trial that the procedure of adding amounts to the bills of the persons from whom hogs were purchased, and the receiving of the additional cash by the bankrupt was known to the plaintiff, and that it was by this means that the bankrupt was to receive his compensation. The dispute is as to the amount of the compensation. The bankrupt originally received a salary of $250 a month. Thereafter his compensation was increased. He says that he was to receive one-third of the profits of the company, and that the amount which he drew, and which is the amount originally sued for in the Supreme Court action, was one-third of the profits of the company. The plaintiff claims that the agreement was that he was to be paid one-third of the profits of the company up to $6,000 per year and no more. The action brought by plaintiff against defendant alleges in the complaint fraud and deceit on the part of the bankrupt in procuring this money from him. Three questions were presented by the court to the jury in writing. These questions were not objected to by either counsel on the trial. They are as follows:

First. Did the defendant receive from the plaintiff the sum of $19,941 in excess of the amount to which he was entitled during the years 1922 to 1926, inclusive? The jury answered this question, "Yes."

Second. Is the plaintiff entitled to a judgment against the defendant for that sum, including interest, making a total of $24,475.15? The jury answered this question, "Yes."

Third. If that excess was obtained, was it obtained by the defendant by fraud and deceit? The jury answered this question, "No."

The court in his charge to the jury stated to them that the main question for them to determine was whether the bankrupt had a one-third interest in the profits of the plaintiff's business, unlimited, or whether his salary, so called, was a one-third interest in the profits of the business limited to $6,000. A compilation of figures was agreed upon and the figures set forth in the questions propounded by the court to the jury represent the amount obtained by the bankrupt, by the means above described, in excess of $6,000 salary a year. A judgment in favor of the plaintiff for $24,574.15 was entered.

In determining whether this judgment is or is not dischargeable in bankruptcy, I will consider first the question, raised by the plaintiff, that the court, in determining motions of this character, will not look beyond the pleadings and the judgment; that the character of the action is determined by the complaint. I conclude that the court in order

to determine the character of the action should examine the judgment roll. Rule 202 of the New York Rules of Civil Practice relating to judgment rolls provides that it shall consist among other papers, of the final judgment and each paper on file and a copy of each order which in any way involves the merits or necessarily affects the judgment. In order to ascertain the fact which was determined by the judgment, it must appear either upon the face of the record, or if there has been any uncertainty on this head in the record, the uncertainty may be removed by extrinsic evidence showing the precise point involved and determined. Russell v. Place, 94 U. S. 606–608, 24 L. Ed. 214; De Sollar v. Hanscome, 158 U. S. 216, 15 S. Ct. 816, 39 L. Ed. 956.

In this case an examination of the record discloses the specific questions presented to the jury in writing which were answered by them. It is not necessary to go outside of the record in this case to determine the precise questions upon which the verdict of the jury was based.

■ There is some question whether it is claimed by the plaintiff that the judgment in this case is not dischargeable in bankruptcy under subdivision 2 or under subdivision 4 of section 17 of the Bankruptcy Act, or under both. I think that the case does not come under subdivision 4. The language of subdivision 4 is: "Fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." It has been settled that the phrase "fiduciary capacity" is attached to the whole clause, and includes only formal fiduciaries such as express trustees, executors, administrators, and the like. In re Harber (C. C. A.) 9 F.(2d) 551, and cases cited; Gilbert's Collier on Bankruptcy (1927 Ed.) p. 409. The judgment under consideration, if it is not dischargeable in bankruptcy, comes within subdivision 2 of section 17 of the Bankruptcy Law.

■ We now come to the question whether this judgment is for a willful and malicious injury. A willful and malicious injury is defined in McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 61 L. Ed. 205, citing Tinker v. Colwell, 193 U. S. 473, 24 S. Ct. 505, 48 L. Ed. 754, as follows: "A willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception."

I do not think that the judgment in this case comes within that exception. The complaint alleges that the bankrupt fraudulently and unlawfully and with preconceived intent, plan, and purpose to defraud the plaintiff, and to obtain large sums of money from him wrongfully and unlawfully made and filled out certain checks; that the bankrupt by fraud and deceit and in pursuance of his preconceived intent, plan, and purpose to defraud the plaintiff, induced the plaintiff to sign said checks; that the bankrupt in pursuance of his unlawful and fraudulent intent, plan, and purpose to obtain money from the plaintiff, obtained such sums of money from time to time. An examination of the record, however, discloses that without objection written questions were given to the jury in such form as apparently to disregard the allegations of fraud and deceit.

The first question asked the jury to determine whether the bankrupt received from the plaintiff a certain sum of money; the second question asked the jury to determine whether the plaintiff was entitled to a judgment for that sum of money including interest; and the third question asked the jury specifically to say whether or not this money was obtained by the bankrupt by fraud and deceit. It seems to me that the verdict of the jury based upon the replies to these three questions submitted to them without objection, and consequently with the approval of counsel for both parties, definitely determines the character of the judgment returned. It is that the money was obtained by the bankrupt from the plaintiff without fraud and deceit, and therefore without willful and malicious injury to the plaintiff within the accepted definition of those words as set forth in Tinker v. Colwell and McIntyre v. Kavanaugh, supra.

The motion is granted.