## In re HAMMOND.

District Court, S. D. New York.
Feb. 7, 1938.

Sapinsley & Lukas, of New York City (Wagner, Quillinan & Rifkind, and Simon H. Rifkind, of New York City, of counsel), for the motion.

Ernst, Gale, Bernays & Falk, of New York City (Murray C. Bernays and Abraham Friedman, both of New York City, of counsel), opposed.

MANDELBAUM, District Judge.

This is a motion by the above-named bankrupt for an order enjoining and staying any and all proceedings on the part of the Irving Trust Company, as trustee in bankruptcy of Sonora Products Corporation of America (formerly known as Acoustic Products Company), a judgment creditor of the bankrupt, in enforcing the collection of a judgment against the bankrupt in the sum of $1,938,755. Certain other judgment creditor's proceedings are sought to be enjoined and stayed by this motion. For convenience, the Irving Trust Company, as trustee in bankruptcy, will hereinafter be designated as trustee, and Sonora Products Corporation of America (formerly known as Acoustic Products Company) will be designated as Acoustic.

### Prior Proceedings.

The trustee, in an equity action in this court, sought to compel the bankrupt, certain individuals and corporations to account for profits which were made by them through the purchase and sale of certain shares of the capital stock in a corporation known as the De Forest Corporation.

It was contended by the trustee that the bankrupt, Harris Hammond, as well as several of the other defendants, who were directors of Acoustic, without authority, acquired the said shares of stock of the De Forest Radio Corporation for their own account, in violation of their duty as directors; that the profits subsequently made by the said defendants and other defendants acting with them belonged to Acoustic.

The action was tried before Judge Woolsey of this court and, after a protracted trial, judgment was rendered in favor of the defendants dismissing the bill of complaint. Irving Trust Co. v. Deutsch, 2 F. Supp. 971.

The trustee appealed to the Circuit Court of Appeals, who reversed the decree of dismissal as against the defendants Hammond (the bankrupt herein), Bell, Biddle, and Deutch and affirmed the decree as to the other defendants. 2 Cir., 73 F.2d 121.

Thereafter, an interlocutory decree was entered directing the unsuccessful defendants to account; that the account was held before a special master; that in his (special master's) findings he concluded that each of the accounting defendants had individually made a profit and that each was jointly and severally liable for all the profits, which he found to be the sum of $2,098,755; that the profit made by the bankrupt was computed to be in the sum of $417,484.50.

On December 2, 1935, a final judgment in the sum of $1,938,755.49 was duly docketed with the clerk of this court against Harris Hammond, Percy L. Deutch, and Victor C. Bell, jointly and severally; that a settlement subsequently made with the defendant Deutch has reduced the amount of the judgment to $1,838,755.49 with interest, which amount at this time is wholly unpaid and unsatisfied. The said final judgment was affirmed on February 1, 1937. 2 Cir., 87 F.2d 1008.

### The Present Motion.

The petitioner seeks a stay of all proceedings on the ground that the judgment against Hammond is a dischargeable one within the meaning and intent of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

The trustee opposes the granting of the motion urging that not only is the judgment one for willful and malicious injuries to the property of another, but that it is a judgment created by his (Hammond's) fraud and for his misappropriation as an officer or in a fiduciary capacity.

Section 17 of the Bankruptcy Act, title 11 U.S.C.A. § 351, upon which the trustee relies, reads in part:

"Debts not affected by a discharge.

"[a] A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * *

"(second) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, * * * or

"(fourth) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

In order for this court to ascertain the character of the liability merged in the judgment, recourse must be had to the pleadings and findings of fact in the court in which the action was tried. In re Adler, 2 Cir., 152 F. 422; Peters v. U. S. ex rel. Kelley, 7 Cir., 177 F. 885; In re Nordlight, D.C., 3 F.Supp. 486; In re Burchfield, D.C., 31 F.2d 118; Gilbert's Collier on Bankruptcy, 4th Ed., § 544.

Without setting forth at length the various allegations of the voluminous complaint, it may be said to allege in substance: That the defendant officers and directors appropriated for themselves both the contract with Reynolds & Co., and the De Forest stock which Acoustic was to have received under the contract; that for this appropriation the defendant officers and directors paid Acoustic absolutely nothing whatever; that it was an outright conversion of corporate property by corporate fiduciaries; that the defendants were guilty of the said appropriation of Acoustic's property and property rights, knowingly and in violation of their fiduciary obligations, duties, and trusts as directors, officers, and agents of Acoustic; that the appropriation complained of was wrongful and illegal.

Judge Woolsey's opinion stood as the findings of fact and conclusions of law required under Equity Rule 70½, 28 U.S.C.A. following section 723. It would serve no useful purpose to set forth in detail the findings of fact made by the trial judge. Suffice to quote two paragraphs from the opinion to illustrate what appears to me to have been the basis of his decree dismissing the complaint without costs. He said, Irving Trust Co. v. Deutsch, D.C., 2 F. Supp. 971, at pages 989, 990:

"Furthermore, it seems to me clear, as above indicated, that it was thoroughly understood at the April 9th meeting that the matter was then finally disposed of, and that, if the Biddle Syndicate bought the stock, they would not be buying it in derogation of the company's right in a field which it had explored, or in an effort to exclude it from that field, but that the members of the Biddle Syndicate, if they bought the stock, would be spending their own money in order to secure for Acoustic what was regarded by all as an advantageous, if not a necessary, objective, which Acoustic itself was not financially in a position to achieve.

"It was for this reason that I stated during the trial that, if there was a conspiracy here, *it was a conspiracy of salvors,*

*not of a conspiracy of pirates.* My further careful consideration of the record has not caused me to change the point of view then indicated." (Italics by the court.)

Clearly then, the dismissal of the complaint negatives the allegations thereof with respect to the commission by Hammond and the other defendants of any willful or intentional wrong.

We must consequently examine the opinion of the Circuit Court of Appeals to determine whether the reversal of the lower court and the final judgment rendered in favor of the plaintiff against Hammond and two others endowed the said judgment with such character as not to be dischargeable in bankruptcy, pursuant to section 17a of the Bankruptcy Act, 11 U.S.C. A. § 35.

Nowhere in the learned opinion of Judge Swan, writing for the Circuit Court of Appeals, do I find any expression of disagreement with any of the findings of fact made by Judge Woolsey. Obviously, if such disagreement existed, the Appellate Court would have directed the submission of new findings of fact. It is therefore my opinion that only as to the conclusions of law as found from the facts did the court disagree with the trial court, and not with its findings of fact. The Circuit Court of Appeals applied the rule of law stated by the New York Court of Appeals in Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1, with respect to fiduciary fidelity, overruling the trial court's finding that the circumstances warranted the creation of an exception to the rule. The rule stated in the Meinhard Case, supra, 249 N.Y. 458, at page 464, 164 N.E. 545, 546, 62 A.L.R. 1, is thus: "Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions."

The Circuit Court of Appeals, in applying the said rule of "uncompromising rigidity" and tolerating no exceptions thereto, said, Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121, 124: "If directors are permitted to justify their conduct on such a theory, there will be a temptation to refrain from exerting their strongest efforts on behalf of the corporation since, if it does not meet the obligations, an opportunity of profit will be open to them personally."

In the Meinhard Case, supra, 249 N.Y. 458, at pages 467, 468, 164 N.E. 545, 548, 62 A.L.R. 1, the court, while holding the fiduciary liable, said: "We have no thought to hold that Salmon was guilty of a conscious purpose of defraud. Very likely he assumed in all good faith that with the approaching end of the venture he might ignore his coadventurer and take the extention for himself."

It thus becomes apparent that the good faith and honesty of purpose of the fiduciary in relation to his cestui has no bearing upon the applicability of the rule of "uncompromising rigidity." With this in mind, the next inquiry is whether the judgment against Hammond comes within the excepted classes of section 17a, subds. 2 and 4, of the Bankruptcy Act, 11 U.S.C.A. § 35(2, 4).

The trustee contends that not only was the petitioner liable for a willful and malicious injury to the property of another as a result of the conversion or appropriation of the profits derived out of the De Forest stock, subdivision 2, but that the petitioner was liable for his fraud or misappropriation while acting as an officer or in a fiduciary capacity, subdivision 4.

The definition of what is "willful and malicious" within the meaning and intent of the Bankruptcy Act has been the subject of judicial determination. Tinker v. Colwell, 193 U.S. 473, 488, 24 S.Ct. 505, 48 L.Ed. 754; McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205. It was in the recent case of Davis v. Ætna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 153, 79 L.Ed. 393, that Judge Cardozo, writing for the court, further clarified the meaning of "willful and malicious" as applied to subdivision 2. He said, 293 U.S. 328, at page 332, 55 S.Ct. 151, 153, 79 L. Ed. 393:

"There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception. Such a case was McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L. Ed. 205, where the wrong was unexcused and wanton. *But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice.* [Cases

cited.] *There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one."* (Italics by the court.)

Returning to the Circuit Court of Appeals opinion in the present case, I cannot glean therefrom any intimation, express or implied, which would invest the acts of Hammond with any corrupt or malicious motives. It was found by the special master, designated to ascertain the amount of the profits, that no damage to Acoustic ensued from the assumption by the directors under the De Forest option. *The Circuit Court of Appeals found that a market operation was never in the contemplation of the parties, and that it was a later development.* From this premise, I must agree with the bankrupt that without the market operation there would have been no profit to the directors on the assumption of the contract, inasmuch as the De Forest stock, at the time of its purchase, was actually worth the 50 cents per share which represented their purchase price. I am constrained to hold that it was the application of the "rigid rule" which impelled the appellate court to charge the bankrupt with liability, irrespective of good faith and honesty of purpose. This, to my mind, is entirely consistent with the finding of Judge Woolsey that it was "a conspiracy of salvors, not of a conspiracy of pirates," and I accordingly find that the judgment against Hammond is not one for willful and malicious injury to property. Cf. In re Dixon, D.C., 21 F.2d 565, 566; In re Burchfield, D.C., 31 F.2d 118, 119.

Did the acts of Hammond (which finally culminated in the judgment against him) constitute fraud or misappropriation while acting as an officer or in a fiduciary capacity? There can be no doubt that his acts involve a species of fraud. But whether it is in the classification which the Bankruptcy Act excludes from discharge must be considered in the light of the decisions which have interpreted this phase of the act.

It has been consistently held that the "fraud" intended in the provision of the Bankruptcy Act is an active or express fraud, as distinguished from an implied or constructive one. In Palmer v. Hussey, 87 N.Y. 303, 307, 308, the Court of Appeals of the state of New York said: "that the 'fraud' intended is an active or express fraud as distinguished from an implied or constructive one, founded merely upon some breach of duty. (Hennequin v. Clews, 77 N.Y. 427 [33 Am.Rep. 641].) * * * or became liable for their amount through an active or express fraud, involving moral turpitude or intentional wrong."

Similarly, in Lawrence v. Harrington, 122 N.Y. 408, 412, 25 N.E. 406, 407: "The fraud intended by the law is a positive fraud, or fraud in fact, as distinguished from constructive fraud founded upon some breach of duty."

Also in Neal v. Clark, 95 U.S. 704, 709, 24 L.Ed. 586: "Means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." See, also, Forsyth v. Vehmeyer, 177 U.S. 177, 20 S.Ct. 623, 44 L.Ed. 723; Tinker v. Colwell, supra; Brown v. Garey, 267 N.Y. 167, 196 N.E. 12, 98 A.L.R. 1449; Wood v. Fisk, 215 N.Y. 233, 109 N.E. 177; Bank of Williamsville v. Amherst Motor Sales, 234 App.Div. 261, 254 N.Y.S. 825.

From an examination of all the proceedings heretofore had, I am led to believe that the acts of Hammond did not constitute an out and out, or positive fraud, and that they were merely constructive or implied in nature, entitling him to the benefits of the Bankruptcy Act, 11 U. S.C.A. § 1 et seq. The finding of lack of positive fraud on the part of Hammond obviates the necessity of determining the issue of whether a director of a corporation is a technical trustee within the act. The existence of both (positive fraud and officer or fiduciary capacity) is necessary in order to render the discharge provision of the act inapplicable.

It is further urged by the trustee, as a ground for the denial of the relief sought, that the interlocutory decree adjudicated that the acts of the bankrupt in dealing with the De Forest shares "were and are an unlawful taking and disposition by said defendants of property and property rights lawfully belonging to Acoustic" and therefore the same is "misappropriation" within subdivision 4, 11 U.S.C.A. § 35(4).

It appears to me that "unlawful taking" and "disposition," as used in the interlocutory decree, should be reconciled with the facts as found by the trial court and which remained undisturbed on appeal. As recently as December 6, 1937, the Circuit Court of Appeals of this Circuit found itself in doubt as to the meaning of the word "misappropriation" as applied to subdivision 4 of section 17. It said, Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510, 512: "Especially after the interpolation of 'misappropriation' between them, which, though indeed a baffling word at best in this context, may have been put in to avoid traditional limitations clinging to the word 'embezzlement.' "

Be that as it may, I am constrained to hold that the misappropriation must be knowingly, willful, and deliberate, based upon an actual fraud, and not arising out of a legal concept which looks only to the relationship of the parties, regardless of intent or good faith. See In re Bernard, 2 Cir., 87 F.2d 705; In re Taub, D.C., 20 F.Supp. 213, 214.

But one other point raised by the trustee need be considered. It is urged on its behalf that regardless of the disposition of the bankrupt's application to stay the enforcement and collection of the judgment within the jurisdiction of this court, the trustee has acquired a lien in an action pending against the bankrupt in Massachusetts and the court is therefore without jurisdiction to stay the continuance of the latter proceeding. The nature of that action is a bill in equity to "reach and apply." The court disagrees with the trustee and holds that the issuance of process in such action is nothing more than the equivalent of the issuance of a summons and complaint in an action in equity within the state of New York. Such action in Massachusetts in and of itself does not operate to divest this court of jurisdiction to stay proceedings there.

The trustee having failed to sustain the burden of proof resting on it to show that this judgment is within the exceptions contained in subdivisions 2 and 4 of section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35(2, 4), the bankrupt's motion is in all respects granted.

Settle order on two days' notice.