In the Matter of SOL SCHENFELD, Appellant, against CATHERINE LAWLOR et al., Respondents.

First Department, February 24, 1953.

*Isidore Miller* for appellant.

*Caesar L. Pitassy* of counsel (*John B. Ball* with him on the brief; *Dwight, Royall, Harris, Koegel & Caskey,* attorneys), for respondents.

CALLAHAN, J. The appellant, a judgment debtor, having been discharged in bankruptcy, moved at Special Term, pursuant to section 150 of the Debtor and Creditor Law of this State, to cancel of record two New York judgments, which had been duly scheduled against him in the bankruptcy proceedings. The respondents, the judgment creditors, opposed the motion on the ground that the judgments were for " willful and malicious injuries " within one of the exceptions contained in paragraph (2) of subdivision a of section 17 of the Bankruptcy Act (U. S. Code, tit. 11, § 35) and, therefore, not dischargeable.

The New York judgments were based on earlier judgments obtained in Vermont. Attached to the opposing affidavits are certified copies of the Vermont judgments. These set forth that they were recovered in actions of tort for personal injuries caused by the negligent operation of an automobile by the defendant (the judgment debtor), which came around a curve on the wrong side of the road at a high and excessive rate of speed and swerved into an automobile in which the plaintiffs (the judgment creditors) were riding.

The Vermont judgments set forth the jurisdictional and other facts disclosing a jury trial of the action and the rendition of verdicts in favor of the plaintiffs therein. Each of the Vermont judgments further recites: " At the time of rendering the judgment it was adjudged by the Court that the cause of action on which such judgment was founded arose from the wilful and malicious acts or neglect of the defendant and that the defendant ought to be confined in close jail."

The Special Term has denied the motion to cancel the New York judgments of record upon the ground that the aforesaid recital in the Vermont judgments as to the nature of the acts of the defendant established conclusively the nondischargeability of the judgments under the Bankruptcy Act in accordance with the rule of *res judicata.* Accordingly, the Special Term held that it was unnecessary to make further search of the record in the Vermont actions to determine whether the judgments were dischargeable.

In order to determine whether the rule of *res judicata* applies, we must consider the nature of the recital above quoted and its legal effect. It appears that under a Vermont statute applicable in actions for tort (Vt. Rev. Stat., 1947, § 2246), a successful plaintiff may move the trial court at the end of the trial for a certificate that close jail confinement upon a body execution is justified to enforce the judgment, when the " cause of action

arose from the wilful and malicious act or neglect of the defendant ''. It is apparent from examination of the Vermont statute that the issue with respect to the willful and malicious nature of the tort is not one which need be raised in the pleadings or passed upon by the jury in rendering its verdict in the tort action. In fact, the certificate, if issued, is not deemed a part of the principal judgment in the case, but independent of and collateral to it (*Jewett* v. *Pudlo,* 106 Vt. 249). The finding of the Vermont court as to the nature of the defendant's act or conduct was intended to relate solely to a procedural step affecting the enforcement of the judgment in Vermont. It would seem, therefore, that the rule of *res judicata* would not apply unless, at least, the issue presented to the Vermont court in determining the nature of the execution and that presently before us is the same.

It appears, however, that the issues are different as relating not only to different relief, but involving different statutes subject to the controlling authority of different jurisdictions in construing them. It is true that the same words '' willful and malicious '' are found in both the Vermont statute and the Bankruptcy Act. But these are words as to the meaning of which courts frequently give different construction, especially when found in different context. In deciding what meaning is to be given such words under the Vermont statute, we would, of course, follow the decisions of the Vermont courts. In determining their meaning within the purview of the Bankruptcy Act, we are required to follow the Federal authorities and the decisions of our own courts. Though the question of dischargeability of a judgment in bankruptcy is generally left to the State court to which an application to cancel the judgment is presented (*Greenfield* v. *Tuccillo,* 129 F. 2d 854), proper construction of the Bankruptcy Act is ultimately for the Supreme Court of the United States (*Lord Loan Co.* v. *Hunt,* 292 U. S. 234).

We find upon examination of the Vermont cases that they appear to place upon the words '' wilful and malicious '', as found in their statute, a meaning somewhat broader and more inclusive than that generally ascribed to the same words in the Bankruptcy Act. This would appear to be particularly so in cases involving accidents arising out of operation of automobiles upon the highways. The Vermont cases would appear to ascribe willful and malicious conduct sufficient to warrant close confinement under Vermont law to any intentional and wrongful act resulting even unintentionally in injury to another

(*Healy* v. *Moore*, 108 Vt. 324; *Mangan* v. *Smith*, 115 Vt. 250; *McKale* v. *Weeks*, 115 Vt. 155; *Judd* v. *Challoux*, 114 Vt. 1).

The phrase '' willful and malicious injuries '' as used in the Bankruptcy Act, on the other hand, is generally construed to involve a wrongful act done intentionally, which necessarily causes harm and is without just cause or excuse (*Tinker* v. *Colwell*, 193 U. S. 473, 487; *Brown* v. *Garey*, 267 N. Y. 167). Thus, the intention to harm, or such an utter disregard of one's duty with respect to the safety of others which through necessity causes an injury so as to be the equivalent of intentional harm, is required under the Federal decisions to prevent discharge of judgments in actions for tortious physical injuries. The mere intention to perform the wrongful act resulting fortuitously in harm or injury appears to satisfy the Vermont law.

In *Brown* v. *Garey* (267 N. Y. 167, 169–170, *supra*) the definition of the term as used in the Bankruptcy Act was said to be: '' ' a willful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.' (*Tinker* v. *Colwell*, 193 U. S. 473, 487.) If the phraseology of that statement trenches unduly on the domain of morals (Cf. Holmes, Collected Legal Papers, p. 171), we may overlook it in part and find a legal test. A wrongful act done intentionally which necessarily causes harm and is without just cause or excuse, constitutes a willful and malicious injury.''

Referring to a like distinction between an intentional and unintentional conversion, the Court of Appeals in *Brown* v. *Garey* (*supra*, p. 170) added: '' an act of domain done under mistake or misapprehension, and without conscious intent to violate right or authority, may yet be a conversion; but it is not a willful and malicious conversion.''

A Vermont authority touching on the construction of both statutes (*Matter of Cote*, 93 Vt. 10) has frequently been considered by the Federal courts. In some instances it has been disapproved as applying a broader and more inclusive rule as to what acts were to be deemed willful injuries and malicious than generally applied by the Federal courts in construing the Bankruptcy Act. (See *Matter of Phillips*, 298 F. 135; *Matter of Roberts*, 290 F. 257; *Matter of Wilson*, 269 F. 845; *Matter of Vena*, 46 F. 2d 81, and *Matter of Kubiniec*, 2 F. Supp. 632.)

In fact, the Vermont courts have had occasion in several cases to compare these two statutes. We find no case in which the courts of that State have held that a determination to issue a close jail certificate was conclusive on the question of dischargeability of the judgment in bankruptcy. It would appear to the contrary that the Vermont courts have decided the question of dischargeability after search of the entire record, including any close jail certificate, rather than rely upon the certificate alone under the rule of *res judicata* (*Flanders* v. *Mullin*, 80 Vt. 124; *Matter of Cote*, 93 Vt. 10). There appears to be no reason why we should follow any different rule.

We find nothing in the case of *Healy* v. *Moore* (108 Vt. 324) relied on by Special Term, contrary to the views herein expressed. The case gave no consideration to the meaning of the exception in the Bankruptcy Act, though it did discuss at considerable length the construction to be given to the Vermont statute relating to close jail confinement. In the case of *Matter of Greene* (87 F. 2d 951) referred to in the dissenting opinion, where the rule of *res judicata* was held to apply, it appears that the question as to whether the defendant's conduct was " wilful and wanton " within the Illinois statute had been raised by the pleadings and presented to the jury, and, therefore, the finding was a constituent part of the judgment rendered in that case. Furthermore, there was no claim that the Illinois law permitted a finding of wantonness on less proof than would establish maliciousness under the Bankruptcy Act. (See, however, *Dacon* v. *Wilman*, 310 Mich. 103, holding a finding of " wanton and wilful misconduct " and " gross " negligence not conclusive.)

We have reached the conclusion that the question presented to the Vermont court in determining whether to issue a certificate of close jail confinement against the defendant is not precisely the same question as is presented to us now. While the inquiries related to the same transaction, each presented a different question with respect thereto. Accordingly, the rule of *res judicata* would not apply. We hold, therefore, that proper procedure requires a search of the entire record in the Vermont action, including the certificate, in order to ascertain whether the collision resulting in injury to the plaintiff through the negligence of the defendant involved a willful and malicious injury so as to prevent dischargeability of the plaintiff's judgments under the Bankruptcy Act. Of course, all disputed issues as to the circumstances of the accident must be deemed to have been resolved in plaintiff's favor.

It is proper that we ascertain whether the collision was one that chanced to happen by reason of an unlawful act involving mere negligence, or whether it involved the intentional doing of an act which necessarily must cause injury to another so as to warrant an implication of malice.

The order appealed from should be reversed, with $20 costs and disbursements, and the matter remitted for a hearing before an official referee to make inquiry and report to the Special Term upon the question of dischargeability.

. Peck, P. J. (dissenting). I dissent and vote to affirm.

Vermont law does not require that in every case the court *must* search the record to discover the character of the act and to determine whether it falls within the exception of paragraph (2) of subdivision a of section 17 of the Bankruptcy Act. The clear import of the holding in *Flanders* v. *Mullin* (80 Vt. 124) is that the court *may* consider the record as a whole where it is impossible to determine from the judgment the nature of defendant's act. Where, as here, the trial court made a separate and independent examination of the evidence, adjudged that the accident resulted from the willful and malicious acts or neglect of defendant, and issued execution confining defendant in close jail, there would appear to be no need or basis for any other court looking behind the judgments.

*Matter of Grout* (88 Vt. 318) is distinguishable. In that case the court made special mention of the fact that the trial court did not find that the cause of action upon which the judgment was founded arose from the willful and malicious acts of the bankrupt, and consequently no such recital was contained in the judgment. That distinction was recognized in *Matter of Cote* (93 Vt. 10) but the court there examined the record solely for the purpose of determining whether the standard of willful and malicious conduct which warrants a close jail body execution in Vermont was identical with the standard provided under the Bankruptcy Act for the exemption of liabilities arising from injuries caused by willful and malicious conduct. Since it has now become well established that "willful and malicious conduct" is similarly defined in both statutes (*Healy* v. *Moore,* 108 Vt. 324; *Matter of Greene,* 87 F. 2d 951), the conclusion is inescapable that under Vermont law where a judgment contains a recital that the cause of action on which such judgment was founded arose from the willful and malicious acts or neglect of defendant, inspection of the pleadings or examination of the record is improper.

All of the issues which may be raised on the proposed hearing before the official referee have been or could have been presented to the court in the Vermont action. The gist of the judgment-debtor's motion to have the Vermont judgments cancelled of record is an attempted retrial of issues previously tried and determined. The Vermont judgments are, therefore, *res judicata.* Accordingly, the order appealed from should be affirmed.

VAN VOORHIS and BREITEL, JJ., concur with CALLAHAN, J.; PECK, P. J., dissents and votes to affirm in opinion in which DORE, J., concurs.

Order reversed, with $20 costs and disbursements to appellant and the matter remitted for a hearing before an official referee to make inquiry and report to the Special Term upon the question of dischargeability. Settle order on notice. [See *post,* p. 1030.]